UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Charles P. Nelson and Darlene F. Nelson, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br>v.<br><br>American Family Mutual Insurance Company,<br><br>        Defendant. | Case No. 13-cv-607 (SRN/SER)<br><br>**MEMORANDUM OPINION AND ORDER** |

Bert Black, Bryce M. Miller, and Lawrence P. Schaefer, Schaefer Law Firm, LLC, 400 South Fourth Street, Suite 202, Minneapolis, Minnesota 55415; Richard J. Fuller, 17722 Lever Street, Ham Lake, Minnesota 55404, for Plaintiffs.

Aaron D. Van Oort, Christina C.K. Semmer, Deborah A. Ellingboe, and Amanda J. Rome, Faegre Baker Daniels LLP, 90 South Seventh Street, Suite 2200, Minneapolis, Minnesota 55402, for Defendant.

SUSAN RICHARD NELSON, United States District Judge

## I.    INTRODUCTION

This matter is before the undersigned United States District Court Judge for consideration of Defendant's Objections [Doc. No. 33] to United States Magistrate Judge Steven E. Rau's September 25, 2013, Report and Recommendation ("R&R") [Doc. No. 32]. The Magistrate Judge recommended that Plaintiffs' Motion to Remand [Doc. No. 15] be denied. (Sept. 25, 2013, Report and Recommendation at 30 [Doc. No. 32].) The Magistrate Judge also recommended that Defendant's Motion to Dismiss [Doc. No. 7] be

1

denied to the extent it seeks dismissal of Count I and II, and granted to the extent it seeks dismissal of Count III. (Id. at 31.) For the reasons set forth below, the Court overrules Defendant's objections and adopts the R&R in its entirety.

## II. BACKGROUND

The R&R thoroughly documents the factual and procedural background of this case, and the Court incorporates it here by reference.

### A. Factual Background

Defendant American Family Mutual Insurance ("American Family"), a Wisconsin company, sells homeowners insurance policies throughout Minnesota. (Class Action Compl. ("Compl.") ¶¶ 1, 10 [Doc. No. 1-1].) Plaintiffs Charles Nelson and Darlene Nelson, residents of Minnesota, purchased a Gold Star Homeowners Insurance Policy ("Gold Star Policy" or "Policy") from American Family for their new home in 1990, which they have renewed several times and remains in effect. (Id. ¶¶ 12-13, 30.)

Under the Gold Star Policies, the Nelsons' home had the following replacement costs: $184,000 in 2004; $415,500 on February 1, 2007; $427,500 on February 1, 2008; $439,000 on February 18, 2009; $450,900 on February 1, 2010; and $454,500 on February 18, 2011. (Id. ¶¶ 30, 33.) The Nelsons claim that the replacement cost of their home in 2010 did not exceed $315,000, and during the relevant time period did not exceed $348,297. (Id. ¶ 33, 37.) After they complained in 2011 to American Family that the estimated replacement cost for their home "greatly exceeded the actual replacement cost," American Family reduced the replacement cost to $315,000. (Id. ¶ 35.)

In addition, American Family's estimated replacement cost of personal property

2

contained within the dwelling increased, at 80% of the structure's replacement cost. (Compl. ¶ 34.) American Family does not ask customers who are renewing their Policies whether there have been any changes to the "existence, nature, or age of personal property." (Id. ¶ 27.) The Nelsons claim that the personal property in their home has never been worth as much as 80% of the replacement cost of their home. (Id. ¶ 34.)

The 2004 Policy and all subsequent Policies stated:

> **Estimated Replacement Cost**. Our residential building cost guide may be used to develop an estimated replacement cost based on general information about your dwelling. It is developed from researched costs of construction materials and labor rates. This is the minimum amount for which to insure your dwelling. The actual cost to replace your dwelling may be different. We do not guarantee that this figure will represent the actual cost to replace your dwelling. You are responsible for selecting the appropriate amount of coverage. You may wish to obtain a detailed replacement cost appraisal or estimate from a contractor. You may select a coverage amount equal to that appraised value or that cost of construction, if the amount is greater than the replacement cost as estimated by our residential building cost guide, and we agree to that amount.

(Minnesota Homeowners Policy—Gold Star Special Deluxe Form [Doc. No. 10-1 at 28].)

The Nelsons allege that American Family's estimates of insurable value regularly exceed the actual replacement costs by significant amounts, especially when policies are renewed.[1] (Compl. ¶ 25.) Consequently, the Nelsons were allegedly induced to buy "unnecessary and excessive coverage" and pay higher premiums associated with the excessive coverage. (Id. ¶ 39.) The Nelsons allege damages of approximately $3,500, and they claim to suffer damages as long as American Family insures their home and its contents. (Id.)

---

[1] Plaintiffs allege that Gold Star Policies automatically update "the replacement cost of the insured property" each time the Policy is renewed. (Compl. ¶ 1.)

3

The Nelsons bring this case on behalf of themselves and two putative classes. For the first class ("Injunctive Class"), the Nelsons seek injunctive and declaratory relief.[2] For the second class ("Damages Class"), the Nelsons seek monetary damages for prior excessive premium payments.[3] In Count I, the Nelsons allege that American Family is liable to the Injunctive Class for engaging in deceptive trade practices under Minn. Stat. §§ 72A.20 and 325D.44. (Compl. ¶¶ 48-55.) In Count II, they allege that American Family is liable to the Damages Class for unlawful conduct under Minn. Stat. §§ 325F.69, 325F.71, and 8.31, subd. 3a. (Id. ¶¶ 56-60.) In Count III, the Nelsons allege that American Family is liable to the Damages Class for unjust enrichment and negligence per se. (Id. ¶¶ 56-65.)

### B. Procedural Background

On January 30, 2013, the Nelsons filed their Complaint in Hennepin County,

---

[2] "Class I: All residents of Minnesota who currently hold a Gold Star Policy from American [Family] covering residential property located in Minnesota and/or the personal property contents of such residential property." (Compl. ¶ 41.)

[3] "Class II: All residents of Minnesota who renewed a Gold Star Policy from American [Family] covering residential property located in Minnesota (and/or the personal property contents of such residential property), at any time after a date six (6) years prior to the commencement of this action, in connection with which, American [Family] charged premiums based on a subsequent estimate of the replacement cost of the dwellings and its contents, and who:

    a. were over the age of 62 at the time of any renewal during the relevant period; and

    b. were provided an estimate of the replacement value of their property that exceeded by more than 10% the value that would have been obtained using the Miller-Swift index.

(Id.)

4

Minnesota.  On March 15, 2013, American Family removed the case to this District and filed a motion to dismiss the following week.  (Notice of Removal [Doc. No. 1]; Mot. to Dismiss [Doc. No. 7].)  On April 12, 2013, the Nelsons filed a motion to remand.  (Mot. to Remand to State Court [Doc. No. 15].)

On September 25, 2013, the Magistrate Judge recommended that: (1) Plaintiffs' Motion to Remand [Doc. No. 15] be denied; and (2) American Family's Motion to Dismiss [Doc. No. 7] be denied to the extent it seeks dismissal of Counts I and II, and granted to the extent it seeks dismissal of Count III.  (Sept. 25, 2013, Report and Recommendation at 30-31 [Doc. No. 32].)

On October 9, 2013, American Family objected to the portion of the R&R that recommended denying its motion to dismiss Plaintiffs' claims for consumer fraud and deceptive trade practices (Counts I and II).  (American Family's Objections at 1, 8-9 [Doc. No. 33].)  On October 22, 2013, Plaintiffs responded to American Family's Objections, arguing that: (1) Defendant's replacement cost representations are deceptive; (2) Defendant's purported disclaimers are insufficient to correct the initial deception; and (3) the determination of deceptiveness is for the jury.  (Pls.' Resp. to Objection to Magistrate's Ruling [Doc. No. 34].)

III.   DISCUSSION

   A.  Standard of Review

A party "may file and serve specific written objections to a magistrate judge's proposed findings and recommendations."  D.Minn. LR 72.2(b)(1).  The district court will review *de novo* those portions of the R&R to which an objection is made, and it

"may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b)(3); D.Minn. LR 72.2(b)(3). Ordinarily, the district judge relies on the record of proceedings before the magistrate judge. D.Minn. LR 72.2(b)(3).

As to the underlying motion to dismiss, the Court must determine whether the Complaint contains "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face'." Zutz v. Nelson, 601 F.3d 842, 848 (8th Cir. 2010) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). The Court accepts the facts alleged in the Complaint as true, and it grants "reasonable inferences in favor of the nonmoving party." Lind v. Midland Funding, L.L.C., 688 F.3d 402, 405 (8th Cir. 2012).

Claims of fraud are governed by Rule 9 of the Federal Rules of Civil Procedure, and they must be pled with particularity. FED. R. CIV. P. 9(b). Required details include the "time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby . . . . [C]onclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule." Parnes v. Gateway 2000, Inc., 122 F.3d 539, 549 (8th Cir. 1997).

**B. Objections**

American Family argues that Plaintiffs' deceptive trade practice and consumer fraud claims fail as a matter of law because "there is nothing deceptive or misleading about the declaration pages or policy language." (American Family's Objections at 7 [Doc. No. 33].) American Family contends that the declaration pages are silent about

6

replacement costs, and the Policy does not make any factual representation about replacement costs.[4] (Id. at 5-6.)

The Court respectfully disagrees with American Family. Although the Policy provides caveats that the estimated replacement cost may differ from the actual replacement cost, the Nelsons are not attempting to hold American Family to a precise amount in order to file a claim under the Policy. Rather, as the Magistrate Judge correctly identified, the Nelsons' allegations about the replacement cost are "about the coverage that American Family told them they needed in order to insure themselves against a total loss." (Sept. 25, 2013, Report and Recommendation at 22 [Doc. No. 32].)

Because the claims at issue sound in fraud, they must be pled with particularity. FED. R. CIV. P. 9(b). After reviewing the Complaint, the Court finds that the Nelsons pled specific facts about the time, place, and contents of the misrepresentations. For example, the Complaint alleges that:

- The Nelsons purchased their first American Family Policy in 1990 and renewed the policy each year since then. (Compl. ¶ 30.)

- The 2004 Policy and all subsequent Policies contained a standard "Estimated Replacement Cost" provision, which prevents a policy holder from reducing any overestimated replacement cost. (Id. ¶ 31.)

- The 2004 Policy and all subsequent Policies contained a standard provision allowing American Family to periodically increase the coverage limits if, and to the extent, the insurable value of the property increased. (Id. ¶ 32.)

- American Family estimated the following replacement costs for the Nelsons'

---

[4] American Family cites the Policy's language that: (1) "[t]he actual cost to replace your dwelling may be different," (2) "[w]e do not guarantee that this figure will represent the actual cost to replace your dwelling," and (3) "[y]ou are responsible for selecting the appropriate amount of coverage." (Id. at 6.)

7

- house: $184,000 in 2004; $415,500 on February 1, 2007; $427,500 on February 1, 2008; $439,000 on February 18, 2009; $450,900 on February 1, 2010; and $454,500 on February 18, 2011. (Id. ¶¶ 30, 33.)

- But based on estimates using the Miller-Swift index—"a nationally accepted and authoritative source for estimating the replacement cost of homes"—the true replacement cost never exceeded $348,297 during the class period. (Id. ¶ 33.)

- The Nelsons objected to American Family in early 2011 that the estimated replacement cost of the dwelling greatly exceeded the actual replacement cost, and American Family reduced its estimate to $315,000. (Id. ¶ 35.)

The Nelsons also identified American Family as the party making the alleged misrepresentations, and they stated that American Family obtained higher premiums from Plaintiffs than it otherwise would have without the alleged misrepresentations. (Id. ¶¶ 28, 39.) Considering the allegations altogether, the Court agrees with the Magistrate Judge's conclusion that the Nelsons pled their deceptive trade practice and consumer fraud claims with particularity.

American Family does not object to the remainder of the R&R. Having conducted a *de novo* review, the Court finds that the Magistrate Judge properly considered Plaintiffs' Motion for Remand and Defendant's Motion to Dismiss. The Court therefore agrees with the Magistrate Judge's recommendation to (1) deny Plaintiffs' Motion to Remand, and (2) grant in part and deny in part Defendant's Motion to Dismiss.

IV. **ORDER**

The Court **OVERRULES** American Family's Objections [Doc. No. 33] and **ADOPTS** the Magistrate Judge's September 25, 2013, Report and Recommendation [Doc. No. 32]. Accordingly, **IT IS HEREBY ORDERED** that:

1. Plaintiffs' Motion to Remand [Doc. No. 15] is **DENIED**;

2. Defendant's Motion to Dismiss [Doc. No. 7] is **GRANTED IN PART** and **DENIED IN PART** as follows:

   a. To the extent the Motion seeks dismissal of Counts I and II, it is **DENIED**.

   b. To the extent the Motion seeks dismissal of Count III, it is **GRANTED**.

Dated: October 23, 2013

s/ Susan Richard Nelson
SUSAN RICHARD NELSON
United States District Court Judge